## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DANNY T. NGUYEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION 21-0411-WS-B** |
| | ) |
| **THE UNITED STATES DEPARTMENT** | ) |
| **OF AGRICULTURE,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER

In order to serve the United States with process, a plaintiff must send a copy of the summons and complaint by registered or certified mail to the Attorney General and must either deliver a copy of these documents to the local United States Attorney or send them to her by registered or certified mail. Fed. R. Civ. P. 4(i)(1). In order to serve a United States agency, a plaintiff must comply with these requirements and must also "send a copy of the summons and of the complaint by registered or certified mail to the agency." *Id*. Rule 4(i)(2). Failure to serve all three recipients within 90 days of filing the complaint exposes the action to dismissal without prejudice. *Id*. Rule 4(m); *see Mused v. United States Department of Agriculture*, 169 F.R.D. 28, 34 (W.D.N.Y. 1996) (service on the agency and the Attorney General, without service on the United States Attorney, was not good service; dismissing action under the predecessor to Rule 4(m)).

In this case, the plaintiff served the United States Attorney by certified mail on December 23, 2021 and the Attorney General by certified mail on January 4, 2022. These uncontested facts are established by the "green cards" signed by the United States Attorney, and by the Attorney General's designee, and returned to the plaintiff. (Docs. 6, 7, 14 at 2). Because the file did not reflect service on the

agency, the Court entered an order on February 14, 2022 for the plaintiff to show cause why the action should not be dismissed under Rule 4(m).  (Doc. 8).

The plaintiff insisted that he had sent process by certified mail to the agency, properly addressed, not just once, but twice.  (Doc. 9 at 2).  The plaintiff, however, was unable to produce a green card reflecting the agency's receipt of either mailing.  For its part, the defendant told the Court on February 25 that "there is no record that Plaintiff actually served the Agency."  (Doc. 11 at 2).  The Court found no good cause but nevertheless granted the plaintiff an extension of time, to March 25, 2022, within which to demonstrate good service on the agency. (Doc. 12).

On March 30, 2022, the defendant moved to dismiss the complaint under Rule 4(m).  (Doc. 14).  The defendant represented that the plaintiff "has not yet served the Agency," and it submitted a tracking history in support of that proposition.  (*Id*. at 3).  The Court, finding that the tracking history raised more questions than it answered, set the matter for an April 26 evidentiary hearing and ordered the parties to pre-file all documents relevant to the service issue, "whether or not favorable to its position."  (Doc. 15 at 3 & n.3).

On April 15, 2022, the defendant filed a motion to cancel the evidentiary hearing and to withdraw its motion to dismiss.  (Doc. 17).  The defendant reported that, in preparing for the hearing, it had discovered that it had in fact been served with process, on or about February 24 and no later than March 2, 2022.  (*Id*. at 2). The Court canceled the hearing, denied the motion to dismiss, and ordered the defendant to show cause for its repeated erroneous representations that the plaintiff had not served the agency.  (Doc. 18).  The Court noted that, had it "not set this matter for a hearing on the motion to dismiss and instead relied (as it should be able to do) on the government's representation, this action would have been dismissed despite the defendant's being patently unentitled to such relief," which the Court characterized as an "unacceptable" situation.  (*Id*. at 1).

2

The defendant has filed its response to the Court's show-cause order.  (Doc. 20).  The defendant and its counsel acknowledge the gravity of the situation, commendably accept responsibility for it, and offer explanation (as ordered by the Court) for how the situation came to be.

First, it is clear that the agency was served much earlier than stated by the defendant in its motion to withdraw its motion to dismiss.  Process was initially sent by certified mail to the agency on December 22, 2021, (Doc. 14-1 at 2; Doc. 19-1 at 3), and it was received no later than January 26, 2022.  (*Id*.).  Process was next sent by certified mail to the agency on February 11, 2022, (Doc. 9 at 2), and it was received no later than February 24, 2022.  (Doc. 19-1 at 3).

Second, the agency's procedures and practices, in place for the past two pandemic years, render it impossible for even the agency to determine exactly when service was accomplished in a particular case.  All mail, including certified mail, is received at a central mail facility in Washington, D.C., but the mail facility does not sign and return any green cards.  (Doc. 19-1 at 2-3).  Instead, certified mailings are delivered to, or retrieved by, the relevant sub-agency or staff office – in this case, the Office of General Counsel ("OGC").  (*Id*. at 3 & n.2).

At some unknown point, OGC staff open the certified mailing, at some unknown point they scan the summons and complaint, and at some unknown point they email the scanned copies to the regional office that will handle the litigation (here, OGC Atlanta).  (Doc. 19-1 at 3).[1]  Neither the envelope, the green card, nor the tracking number is scanned by OGC and sent to the regional office.  (*Id*.).  The green card remains physically with OGC, (*id*.), but apparently not in a place it can

---

[1] While OGC staff emailed OGC Atlanta a scanned copy of the summons and complaint on January 26, it it probable that this material was received by the agency weeks earlier.  The summons to the Attorney General carries the same December 22, 2021 date as that directed to the agency, (Doc. 3 at 1, 2), and the Attorney General's green card reflects service on January 4, 2022.  (Doc. 6).

be easily located;[2] nor is the green card signed and returned by OGC.  (*Id*. at 3).
As the defendant describes it, "[c]ertified mail targeted for a regional office has
been scanned and sent electronically and 'green cards' have languished unsigned."
(Doc. 20 at 5).  This inaction by the agency renders it essentially impossible for a
plaintiff – including the plaintiff in this action – to demonstrate the fact or timing
of service.

Third, the agency has maintained inadequate procedures and practices for
addressing questions regarding service.  Without detailing them, suffice it to say
that the agency was unable to resolve the seemingly simple question of whether
the summons and complaint in OGC Atlanta's possession had come via service or
through some other means.

Fourth, and most disturbingly, the agency did not content itself with
expressing to the Court either uncertainty or neutrality as to whether it had been
properly served.  Even though the agency admits that OGC Atlanta knew it
possessed a scanned copy of the summons and complaint sent from OGC, and
even though the agency has offered no possible source of such a scanned copy
from OGC other than via service, (Doc. 19-2), it twice told the Court in definitive
language, long after January 26, that "there is no record that Plaintiff actually
served the Agency" and that the plaintiff "has not yet served the Agency."

The saving grace of this unfortunate situation is that the agency has
committed itself to altered procedures going forward.[3]  First, the administrative
support staff of the sub-agency or staff office to which a certified mailing is
directed "is responsible for signing and returning" the green card to the Postal
Service "upon receipt."  (Doc. 19-1 at 5).  Second, "the Agency now scans the
envelope and 'green card' and includes those when electronically transmitting

---

[2] It appears from the agency's silence that it has been unable to locate the green
cards and envelopes at issue in this case.

[3] These assurances are provided in the declaration of the Director of the Office of
Administration and Resource Management in OGC.  (Doc. 19-1).

certified mail to regional offices." (*Id*. at 6). Third, OGC has hired support staff to handle retrieving mail addressed to that office and ensuring it is properly directed to the proper regional office or other recipient. (*Id*.).[4]

It appears to the Court that these changes will greatly reduce, if not eliminate, situations such as that presented here. Given the agency's candid admission of error, its initiation of appropriate steps to avoid such error in the future, and the plaintiff's failure to insist on sanction, the Court concludes that no further action by the Court is necessary regarding the situation addressed herein. The Court, however, does advise the agency to review all civil cases against it that were dismissed, in or after March 2020, pursuant to Rule 4(m) or 12(b)(5), and to confirm for each such case that it was not in fact served with process. The Court further anticipates that this order will be available electronically for reference by any litigant or court facing a similar situation.

DONE and ORDERED this 9th day of May, 2022.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[4] For its part, the United States Attorney's office "will email a copy of this Court's April 18 [show cause] Order to client agencies whenever a rule 12(b)(5) motion to dismiss is being considered and advise agency representatives accordingly." (Doc. 20 at 9).